Mark Ankcorn (166871)
ANKCORN LAW FIRM, PC
11622 El Camino Real, Suite 100
San Diego, California 92130
(619) 870-0600
(619) 684-3541 fax
*mark@ankcorn.com*

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Kelli Hayward**, an individual,<br>Plaintiff,<br>v.<br>**Bank of America, N.A.**,<br>Defendant. | Case No.<br>**Complaint**<br>Jury Trial Demanded |

1. Kelli Hayward and her husband James bought a house in Anderson, California and borrowed $251,000 to finance the purchase in 2009. Servicing on the loan was acquired by Defendant Bank of America, N.A. (the "Bank") shortly thereafter. They lived there together until James passed away later that year. Ms. Hayward continued to live in the home until September 2013 when it was completely destroyed by fire.

2. Fortunately, Ms. Hayward had an insurance policy with Nationwide which paid $464,401 within a few weeks, substantially more than the $230,000 or so that Ms. Hayward still owed on the mortgage. The check was made out to Ms. Hayward and the Bank. She took it down to her local branch in Redding, California, and with the assistance of a Bank employee named Darlene, Ms.

Hayward endorsed the check and sent it to the department at the Bank where she was instructed.

3. But instead of paying off the loan and returning the rest of the money to Ms. Hayward, the Bank kept all of it, credited none of it to the loan, and continues to this day to insist that she owes more than $332,000 on the loan. The Bank has assessed fees for inspecting and appraising the house for years — despite the fact that the house burned down in 2013 and was never rebuilt; the address is a vacant parcel of nine acres.

4. The Bank has recently instituted foreclosure proceedings and relentless hounds Ms. Hayward with collection calls and letters, ignoring her multiple requests to stop, her repeated explanations that she owes nothing, her demands for repayment of the excess insurance money, and even letters from attorneys.

5. Ms. Hayward, the Plaintiff here, has no other option but to bring this action for damages, injunctive relief, and any other available legal or equitable remedies.

**Jurisdiction and Venue**

6. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 47 U.S.C. § 227, and under 28 U.S.C § 1367 for pendant state law claims.

7. This action arises out of Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.32 ("RFDCPA"), as well as tortious conduct and breach of contract.

8. Venue is proper in this District pursuant to 28 U.S.C § 1391(b), in that Plaintiff resides in this District, Defendant transacts business in this District and the acts giving rise to this action occurred in this District.

///

**Parties**

9. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of California. Plaintiff is a "person" as defined by 47 U.S.C. § 153 (39) and California Civil Code § 1788.2(g).

10. Defendant is a national banking association operating from an address of 100 North Tryon Street, Charlotte, North Carolina, and has dozens if not hundreds of retail bank branches in this District. Defendant is a person who, in the ordinary course of business, regularly, on behalf of itself or others, engages in "debt collection" as that term is defined by Cal. Civ. Code § 1788.2(b), and is therefore a "debt collector" as that term is defined by Cal. Civ. Code § 1788.2(c). Defendant is not an attorney or counselor at law, nor an association of such licensed professionals.

11. At all times relevant Defendant conducted business in the State of California and in the County of Shasta, within this judicial district.

**Factual Allegations**

12. Cal. Civ. Code §§ 1788.2(d), (e), and (f) similarly define the terms "debt," "consumer credit transaction," and "consumer debt" together to include money which is due or owing, or alleged to be due or owing, from a natural person to another person and which is or was incurred primarily for personal, family, or household purposes.

13. Defendant alleges in its communications with Plaintiff that Plaintiff is responsible for mortgage debt that is due or owing, a debt that was incurred for personal, family, or household purposes and therefore meets the definition of a consumer debt under Cal. Civ. Code § 1788.2(f).

14. Defendant's various communications with Plaintiff discussed in this Complaint all fall within the term "debt collection" as that term is defined by Cal. Civ. Code § 1788.2(b).

15. Plaintiff is the subscriber for cellular telephone services on two telephone lines, the first with a telephone number ending in 2448 and another for a telephone number ending in 8550. She received calls from Defendant on both numbers which were placed using an automatic telephone dialing system without her consent.

***The Mortgage***

16. Plaintiff and her husband borrowed $251,000.00 from Summit Funding, Inc., executing a promissory note and deed of trust on January 22, 2009. A copy of the deed of trust as recorded with the Shasta County Assessor-Recorder is attached here as Exhibit "A." No other indebtedness, mortgage, or loan was taken against the property, either senior or junior to that deed of trust.

17. Paragraph 4 of the deed of trust requires the borrower to maintain insurance on all improvements on the property covering "any hazards, casualties, and contingencies, including fire" and Ms. Hayward complied fully with that requirement.

18. That same paragraph also states that "[a]ny excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto."

19. Under California law, a deed of trust constitutes a contract between the trustor and the beneficiary, with the trustee acting as agent for both and acting pursuant to the terms of the instrument and their instructions. *Hatch v. Collins*, 225 Cal. App. 3d 1104, 1111, 275 Cal. Rptr. 476, 480 (1990).

***The Fire***

20. Beginning on September 9, 2013, the Clover Wildfire burned more than 8,000 acres in rural areas southwest of Redding, California. Sixty-eight residences and 128 outbuildings were destroyed, including Plaintiff's home on Cloverdale Road in Anderson, California. The fire raged for nearly a week before it was fully contained.

21. Plaintiff immediately notified her insurer, Nationwide, and the Shasta County Assessor-Recorder sent her a notice of correction to the tax roll which acknowledged that the structure on the property had been completely destroyed. A copy of that notice is attached as Exhibit "B" and is dated October 16, 2013.

22. Nationwide issued a check in the amount of $464,401.30 made payable to Ms. Hayward, as well as BAC Home Loans Servicing, L.P., a now-defunct entity that was wholly owned and operated by Defendant to conduct mortgage servicing, and The Greenspan Company / Adjusters International. Both Ms. Hayward and Greenspan duly endorsed the check and presented it the Bank.

23. A copy of that endorsed check is attached as Exhibit "C" and shows that the Bank endorsed the check as "Bank of America, N.A., f/k/a BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP, Deposit Only." The check was deposited with Defendant on December 5, 2013.

24. A payoff statement by the Bank dated November 15, 2013 shows that Ms. Hayward only owed $280,903.03 by the Bank's own calculation — a figure that is considerably overstated since it includes $29,393.15 in interest that was improperly calculated, $2,015.64 in improperly assessed late charges, $8,780.76 in inflated escrow charges, and an unspecified $578.00 in "other amounts due."

25. Plaintiff owed not more than $240,132.87 as of December 5, 2013, and Plaintiff seeks discovery to determine the true and correct amount.

26. But even the Bank's numbers show that Ms. Hayward was owed $183,498.27 in excess insurance proceeds. Since no other person could or did make a claim against the property, the excess proceeds should have been promptly returned to Ms. Hayward under Paragraph 4 of the Deed of Trust.

27. To this day, despite multiple requests, the Bank has returned some, but not all, of these insurance proceeds and has willfully converted the funds to its own use.

28. The Bank continues to assess interest and late fees on the loan and has even charged Plaintiff nearly $2,000 for homeowner's insurance annually to protect against hazards to the property (which has been a vacant lot since the fire in 2013). A copy of a payoff statement showing these insurance charges is dated November 2, 2015 is attached here as Exhibit "D." That statement also shows, on page two, more than one thousand dollars in "yard maintenance," three hundred and thirty dollars for "property inspection," and $139.65 for photos. These inflated and unnecessary charges are examples of the Bank's bad-faith inflation of escrow charges and Plaintiff alleges that additional such charges will be revealed in discovery.

***The Collection Calls***

29. Beginning even before the fire, Defendant initiated multiple telephonic communications from various telephone numbers to Plaintiff's cellular telephone numbers ending in 2448 and 8550 using an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1) and/or an artificial or prerecorded voice, as prohibited by 47 U.S.C. § 227 (b)(1)(A).

30. This ATDS used by Defendant to call Plaintiff had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

31. Each of these calls was an attempt to collect on a consumer debt allegedly due and owing by Plaintiff. These calls are harassing, repetitive, and deliberately calculated to intrude on Plaintiff's privacy.

32. The calls from Defendant continue to the present day and Plaintiff seeks discovery to determine the exact number and timing. Based on the call history, Plaintiff conservatively estimates that well in excess of one thousand calls have been placed by Defendant to her cellular telephone number ending 2448 and/or 8550.

33. None of the calls were made with Plaintiff's express consent.

34. Each of the calls were made by Defendant or a third party acting on its behalf and under its control using telephone equipment that meets the definition of an "automatic telephone dialing system" under the TCPA.

35. Plaintiff answered many of the above mentioned autodialed telephone calls from Defendant and asked Defendant to stop calling. Despite these clear and unmistakable request, the calls continue without interruption. Each of these requests terminated any express or implied consent that Defendant may have had prior to beginning its campaign of harassment by telephone.

36. Several of the calls when answered played a pre-recorded message.

37. Plaintiff also began to ignore or send to voice mail many incoming calls from numbers she did not recognize, out of frustration in dealing with Defendant's unwanted and intrusive calls. In doing so, she missed many important communications from friends and family.

38. Plaintiff's cellular telephone numbers ending in 2448 and 8550 were assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming calls and texts pursuant to 47 U.S.C. § 227(b)(1).

39. These telephone communications constituted communications that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

40. Plaintiff did not provide prior express consent to receive calls or messages placed utilizing an ATDS, as required by 47 U.S.C. § 227 (b)(1)(A).

41. These telephone communications by Defendant, or its agent, violated 47 U.S.C. § 227(b)(1).

42. Additionally, Defendant used an artificial and/or pre-recorded voice to make calls to Plaintiff's cellular telephone numbers, which is a separate and independent violation of the TCPA and makes Defendant liable for additional statutory damages.

43. Through this conduct of calling Plaintiff and causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously

with intent to annoy, abuse or harass any person at the called number, Defendant engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of the debt, in violation of 15 U.S.C. § 1692d(5), which is incorporated into the RFDCPA by Cal. Civ. Code § 1788.17. Through this conduct, Defendant violated Cal. Civ. Code § 1788.17.

44. Through this conduct of calling Plaintiff continuously after Plaintiff informed Defendant numerous times that Plaintiff wished the calls to cease, Defendant used false, deceptive, or misleading representations in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e, which is incorporated into the RFDCPA by Cal. Civ. Code § 1788.17. Through this conduct, Defendant violated Cal. Civ. Code § 1788.17.

45. Each of the above-described practices and conduct outlined in the preceding paragraphs also constitute unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f, which is incorporated into the RFDCPA by Cal. Civ. Code § 1788.17. Through this conduct, Defendant violated Cal. Civ. Code § 1788.17.

46. Through this conduct of calling Plaintiff by means of an ATDS to a telephone number assigned to cellular service without first obtaining Plaintiff's express consent in order to collect on a consumer debt, Defendant used unfair or unconscionable means to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692f, which is incorporated into the RFDCPA by Cal. Civ. Code § 1788.17. Through this conduct, Defendant violated Cal. Civ. Code § 1788.17.

47. Plaintiff felt frustrated, angry, and helpless as a result of the calls. The unrelenting, repetitious calls disrupted Plaintiff's daily activities and peaceful enjoyment of her personal life.

48. The calls placed by Defendant to Plaintiff were extremely intrusive into Plaintiff's personal life by both pattern and volume, and had a detrimental effect on her relationships with close family members.

49. Defendant is no stranger to TCPA litigation. On August 31, 2011, the undersigned counsel filed a putative national class action on behalf of two mortgage loan borrowers against Defendant alleging violations of the TCPA for making calls using an ATDS to call their cell phone. *Ramirez v. Bank of America, N.A.*, Case No. 3:11-cv-2008 (S.D.Cal.). The Bank settled that lawsuit and four others paying more than $32 million to consumers who it dialed to collect on mortgage and credit card debt from August 2007 through January 31, 2013. The Bank was sued again for robocalls and once again settled on a class-wide basis, paying $1 million to consumers who were called for someone else's debt. *Swift v. Bank of America, N.A.*, No. 3:14-cv-1539-HES-PDB (M.D. Fla.).

50. Despite knowing its obligations under state and federal law to refrain from placing unconsent calls to consumers' cell phones, the Bank nevertheless placed hundreds of calls to Plaintiff's cell phone in deliberate disregard of those duties and obligations.

**First Claim for Relief**

**Telephone Consumer Protection Act — 47 U.S.C. § 227(b)(1)**

51. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

52. Within a four-year period immediately preceding this action, Defendant placed hundreds of calls to Plaintiff's cellular telephone service using an automatic telephone dialing system and/or an artificial or prerecorded voice in violation of the TCPA.

53. As a direct and intended result of the above violations of the TCPA, Defendant caused Plaintiff to sustain damages.

54. Defendant did not have prior express consent from Plaintiff to use an ATDS or to employ an artificial or prerecorded voice to call the Plaintiff's cellular telephone.

55. Under 47 U.S.C. § 227(b)(3)(B), Plaintiff is entitled to statutory damages under the TCPA of not less than $500.00 for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B).

56. Defendant willfully and knowingly violated the TCPA, and as such Plaintiff is entitled to as much as $1,500.00 for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(C).

57. Plaintiff is entitled to injunctive relief prohibiting such conduct in the future.

**Second Claim for Relief**

**RFDCPA — Cal. Civil Code §§ 1788-1788.32**

58. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

59. The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the RFDCPA, including but not limited to each and every one of the above-cited provisions of Cal. Civ. Code §§ 1788-1788.32.

60. As a result of Defendant's violations of the RFDCPA, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from Defendant; and an award of remedies arising under 15 USC § 1692k of actual damages, statutory damages of $1,000.00, costs of litigation and reasonable attorney's fees pursuant to Cal. Civ. Code § 1788.17 from Defendant.

///

**Third Claim for Relief**

**Negligence**

61. Plaintiff re-alleges and incorporates by reference the above paragraphs as through set forth fully herein.

62. Plaintiff believes and thereon alleges that Defendant owed various duties to Plaintiff pursuant to the statutes described herein. Specifically, Defendant owed a duty to Plaintiff with regard to the manner of debt collection practices.

63. Defendant breached Defendant's respective duties by engaging in the acts described herein each in violation of the statutes alleged herein.

64. Plaintiff asserts that Defendant is both the actual and legal cause of Plaintiff's injuries.

65. Plaintiff believes and thereon alleges that as a proximate result of Defendant's negligence, Plaintiff has suffered significant emotional distress.

66. Due to the egregious violations alleged herein, Plaintiff asserts that Defendant breached Defendant's respective duties in an oppressive, malicious, despicable, gross and wantonly negligent manner. As such, said conduct Defendant's conscious disregard for Plaintiff's rights entitles Plaintiff to recover punitive damages from Defendant.

**Fourth Claim for Relief**

**Invasion of Privacy**

67. Plaintiff re-alleges and incorporates by reference the above paragraphs as through set forth fully herein.

68. Plaintiff had an objectively reasonable expectation of privacy at home, at work, and when conducting her daily affairs, to expect that she would not be subject to relentless collection calls for a debt she doesn't owe. Defendant's unrelenting campaign of harassment by placing hundreds of phone calls intruded into this reasonable expectation of privacy.

69. The frequency and cumulative volume of Defendant's phone calls were received in a manner that would be highly offensive to a reasonable person in the same or similar circumstances.

**Fifth Claim for Relief**

**Breach of Contract**

70. Plaintiff re-alleges and incorporates by reference the above paragraphs as through set forth fully herein.

71. The Parties entered into a written contract for the extension of credit and as described above secured by real property located in California. As such, California law controls the relationship between the Parties.

72. It is well established within California that every contract imposes upon the contracting parties the duty of good faith and fair dealing.

73. "Good faith" means honesty in fact and the objectively reasonable conduct both in the performance and the enforcement of the contract, including the assertion, settlement and litigation of contract claims and defenses.

74. When the Bank violated the law multiple times over a period of years in attempting to collect on money that was not owed by Plaintiff under the contract, the Bank breached the implied covenant of good faith and fair dealing.

75. When the Bank engaged in unfair and invasive conduct in attempting to collect money not legally owed, it breached the implied covenant of good faith and fair dealing.

76. When the Bank withheld excess insurance proceeds from Plaintiff and refused to turn it over despite repeated requests, it breached the implied covenant of good faith and fair dealing in addition to the express term of the Deed of Trust which required the Bank to turn over to Plaintiff all excess insurance proceeds after satisfaction of the loan obligation.

77. As a consequence of the Bank's breach of these implied and express covenants, it is liable to Plaintiff for damages together with prejudgment interest.

**Sixth Claim for Relief**

**Conversion**

78. Plaintiff re-alleges and incorporates by reference the above paragraphs as through set forth fully herein.

79. The essential elements of a conversion action under California law are the plaintiff's ownership or right to possession of property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use.

80. Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment.

81. Here, Plaintiff had the right to possession of excess insurance proceeds in a specific, identifiable sum of not less than $183,498.27 as of December 5, 2013. The Bank knowingly withheld and refused to pay Plaintiff those excess funds. Indeed, the Bank even refused to credit any portion of the proceeds against Plaintiff's mortgage debt, initiating foreclosure proceedings against the land where Plaintiff's home once stood.

82. As a consequence of the Bank's tortious and willful conversion of nearly two hundred thousand dollars lawfully belonging to Plaintiff, it is liable to Plaintiff for damages together with prejudgment interest.

**Jury Trial Demand**

83. Plaintiff demands a jury trial on each of the causes of action set forth above, including the amount of statutory damages.

**Prayers for Relief**

Wherefore, Plaintiff respectfully prays that judgment be entered against Defendant for the following:

1. An injunction against the calling of Plaintiff's cellular telephone by Defendant and its contractors, agents and employees;
2. Damages pursuant to 47 U.S.C. § 227(b)(3);
3. Damages pursuant to Cal. Civ. Code §§ 1788.17 and 1788.30;
4. A return of all excess insurance proceeds together with interest thereon pursuant to Cal. Civ. Code § 3287;
5. General, special, and punitive damages according to proof;
6. Costs of litigation and reasonable attorneys' fees;
7. Such other and further relief as the Court may deem just and proper

Dated: December 29, 2016 Ankcorn Law Firm, PC

*/s/ Mark Ankcorn*

Attorneys for Plaintiff