UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KELLI HAYWARD, an individual,

Plaintiff,

v.

BANK OF AMERICA, N.A.,

Defendant.

No. 2:16-cv-03047-MCE-CMK

**MEMORANDUM AND ORDER**

Through this action Kelli Hayward ("Plaintiff") seeks redress from Bank of America, N.A. ("Defendant") due to its alleged unlawful actions in connection with her mortgage loan. Plaintiff's First Amended Complaint ("FAC") asserts ten causes of action under both federal and California state laws. FAC, ECF No. 7, at 10–16. Now before the Court is Defendant's Motion to Dismiss and/or Strike ("Defendant's Motion"), brought pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f),[1] to dismiss Plaintiff's state law claim for Intentional Infliction of Emotional Distress ("IIED"), and strike her requests for punitive damages. Def.'s Mot., ECF No. 10, at 2:3–27.

For the reasons set forth below, Defendant's Motion is DENIED.[2]

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

1

**BACKGROUND**

In January 2009, Plaintiff and her husband secured a $251,000 loan to purchase the home located at 14636 Cloverdale Road, Anderson, California ("Subject Property"). FAC ¶¶ 1, 5, 17. Plaintiff's husband died later that year, but she continued to live in the home until September 2013, when it was completely destroyed by the Clover Wildfire. FAC ¶¶ 1, 21.

On November 1, 2013, Plaintiff's home insurance company issued a check made payable to both Plaintiff and Defendant in the amount of $464,401.30 (the "Insurance Check") for the losses associated with the destruction of the Subject Property. FAC ¶¶ 23–24; FAC, ECF No. 7-1, Ex. C. Defendant subsequently provided Plaintiff a payoff statement indicating that Plaintiff owed $280,903.03 on the Subject Property's loan as of November 15, 2013 ("2013 Payoff Statement").[3] FAC ¶ 25, Ex. D. The Insurance Check was endorsed by both parties, and deposited with Defendant on December 5, 2013. FAC ¶ 24. Plaintiff contends that the Insurance Check should have paid off the Subject Property's loan, and the residual insurance proceeds should have been returned to her. FAC ¶ 27. However, Plaintiff claims that Defendant did not credit any of these funds to the loan, and only returned a portion of the insurance money to her. FAC ¶¶ 3, 28.

Furthermore, Plaintiff alleges that despite her repeated explanations that her loan was paid by the Insurance Check, Defendant relentlessly pursued payment via collection calls and letters. FAC ¶ 4. Plaintiff claims that Defendant ignored her demands that the residual insurance money be returned, as well as her requests to discontinue the collection calls. FAC ¶ 4. Plaintiff alleges that she has received in excess of 1,000 such calls to two different cellular telephone numbers. FAC ¶ 33. Plaintiff further alleges that Defendant assessed additional fees on the loan for inspecting and appraising the

---

[3] The Court recognizes that Plaintiff disputes owing this amount on the loan at the time of the Subject Property's destruction. See FAC ¶ 25. However, determination of this issue is outside the scope of the present motion.

Subject Property over the past three years, despite the fact that the house was never rebuilt. FAC ¶ 3.

Defendant provided a second payoff statement on November 16, 2016 ("2016 Payoff Statement"), indicating that Plaintiff owed $332,216.67 on her loan as a result of additional fees and accrued interest. FAC, Ex. D. The 2016 Payoff Statement also indicated that the loan is in foreclosure, and Plaintiff claims that Defendant has initiated foreclosure proceedings on the Subject Property. FAC ¶ 4, Ex. D. Plaintiff provides that she felt frustrated, angry, and helpless as a result of Defendant's actions, and that the unrelenting, repetitious calls disrupted her daily activities and the peaceful enjoyment of her personal life. FAC ¶ 48.

Plaintiff filed her original Complaint on December 29, 2016, bringing six causes of action. Compl., ECF No. 1. She filed her FAC on March 13, 2017, bringing four additional causes of action, to include an IIED claim and requests for punitive damages. FAC at 14–16. Defendant filed its Motion on April 3, 2017, moving to dismiss Plaintiff's IIED claim and to strike references to punitive damages in the FAC.[4] Def.'s Mot. at 2:3-27. Plaintiff filed her Opposition on April 20, 2017, (ECF No. 11), to which Defendant replied on April 27, 2017. ECF No. 12.

**STANDARD**

**A.   Motion to Dismiss**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

---

[4] Plaintiff's request for punitive damages are under her ninth and tenth causes of action, for alleged violations of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., and the Consumer Credit Reporting Agencies Act ("CCRA"), Cal. Civ. Code § 1785 et seq., respectively.

3

what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

4

to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**B.     Motion to Strike**

The Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . ." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds 510 U.S. 517 (1994) (internal citations and quotations omitted). Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. Id.

**ANALYSIS**

**A.     Motion to Dismiss the IIED Claim**

Defendant moves to dismiss Plaintiff's IIED claim on the grounds that: (1) Plaintiff relies solely on conclusory allegations to support her claim; and (2) even taking Plaintiff's

allegations as true, Defendant's actions were not sufficiently extreme or outrageous to support an IIED claim. Def.'s Mot. at 2:3–8, 7:17–21, 11:9–13.[5] The Court disagrees on both contentions.

To prevail on a claim for IIED, Plaintiff must show: (1) extreme and outrageous conduct by the Defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) resulting severe or extreme emotional distress by the Plaintiff; and (3) actual and proximate causation of the emotional distress by the Defendant's outrageous conduct. Cochran v. Cochran, 65 Cal. App. 4th 488, 494 (1998). "The alleged outrageous conduct 'must be so extreme as to exceed all bounds . . . usually tolerated in a civilized community.'" Id. In addition, the requisite severe emotional distress must be such that "no reasonable [person] in civilized society should be expected to endure it." Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1004 (1993).

Plaintiff provides sufficient facts to support her IIIED claim. Plaintiff asserts that Defendant relentlessly harassed her with collection calls, and that her multiple requests for the calls to cease went unheeded. FAC ¶ 3. Plaintiff alleges that she received in excess of 1,000 collection calls in the three years subsequent to the Insurance Check being deposited with Defendant. FAC ¶¶ 16, 30, 33. Plaintiff claims that these calls were harassing and repetitive, which frustrated her to such an extent that she began to ignore her phone calls, causing her to miss communications from friends and family. FAC ¶¶ 31, 38. She alleges that she felt frustrated, angry, and helpless because of Defendant's calls, and that her daily activities and peaceful enjoyment of her personal life was impacted as a result. FAC ¶ 48. These factual allegations suffice to meet the

---

[5] Defendant raises an additional argument for the first time in its Reply, contending that pursuant to the Deed of Trust for the Subject Property, it had discretion whether to apply the insurance proceeds to either (1) Plaintiff's loan, or (2) towards the restoration of the damaged property. Def.'s Reply, ECF No. 12, at 2:7–11. Defendant argues that since Plaintiff failed to "unequivocally communicate[ ]" that she wanted the insurance proceeds to apply to her loan debt, as opposed to restoration of the Subject Property, that Defendant's decision to not apply the insurance proceeds to the outstanding loan was appropriate. Def.'s Reply at 2:11–16, 2:17–19. Since this argument was raised for the first time in Defendant's Reply, the Court need not consider it on this motion. Nevertheless, taking Plaintiff's factual allegations as true, the Court finds this position to be wholly unconvincing, and bordering on absurdity.

general pleading standards of Rule 8(a)(2) and raise Plaintiff's IIED claim well beyond the speculative level. Twombly, 550 U.S. at 555. Moreover, Defendant's own cited case law supports such a finding. See Hutchins v. Bank of Am., N.A., No. 13-cv-03242-JCS, 2013 U.S. Dist. LEXIS 154495, at *30 (N.D. Cal. Oct. 28, 2013) (providing that plaintiff's allegations of "loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression" as a result of the defendant's actions would have been sufficient to support an IIED claim if it had otherwise been properly raised).

Defendant's second contention is that its alleged conduct did not rise to the requisite level of outrageousness to support an IIED claim. Def.'s Mot. at 12:22–26. The Court again disagrees. Taking Plaintiff's allegations as true, she provides that after losing her home in a catastrophic wildfire, she gave $464,401.30 in home insurance proceeds to Defendant to pay off a loan that did not exceed $280,903.03. FAC ¶¶ 24-25. Defendant, in turn, allegedly kept nearly all of these proceeds, failed to credit any money to Plaintiff's loan, inflated the principal owed on her loan by over $51,000, initiated aggressive collection actions against Plaintiff, and put her loan in foreclosure. FAC ¶¶ 3–4, 28, 33, Ex. D. These alleged actions, considered as a whole, suggest a level of outrageousness that this Court has rarely seen in similar situations.

Defendant nonetheless relies on several cases to support the argument that its actions were not extreme or outrageous. Def.'s Mot. at 13:23–24, 13:27–28. This reliance is misplaced, however, as the cited cases involve instances where debts were legitimately owed. See Mehta v. Wells Fargo Bank, N.A., 737 F. Supp. 2d 1185, 1204 (S.D. Cal. 2010) (Since "Plaintiff was in default on his loan [and] Wells Fargo had the legal right to foreclose . . ." the sale of the home despite an alleged promise by an employee to postpone foreclosure was not "outrageous as that word is used in this context."); Coyotzi v. Countrywide Fin. Corp., No. CVF09-1036 LJO SMS, 2009 WL 2985497, at *10 (E.D. Cal. Sept. 16, 2009) ("[G]enerally accepted [actions] in the foreclosure process," while "inherently stressful for debtors," are not enough to support

an IIED claim.). In these cases, the defendant's conduct did not occur in the context of erroneous debt collections, and thus are distinguishable from the present matter. The Court's findings here are consistent with its past holdings considering similar matters. In a case where plaintiff-homeowners were not delinquent on their home loan payments, yet faced immediate foreclosure due to the defendant-bank's misguidance, this Court found that plaintiffs' allegations of emotional distress were "adequate at this time to support a claim for IIED given what ultimately transpired." Hawkins v. Bank of Am. N.A., No. 2:16-cv-00827-MCE-CKD, 2017 U.S. Dist. LEXIS 20912, at *14 (E.D. Cal. Feb. 13, 2017) (citing Ragland v. U.S. Bank Nat'l Assn., 209 Cal. App. 4th 182, 204 (2012)).

The Court finds that Plaintiff's allegations of extreme and/or outrageous conduct suffice for pleading purposes. Thus, Defendant's motion to dismiss Plaintiff's IIED claim is DENIED.

### B. Motion to Strike the Request for Punitive Damages

Defendant additionally moves to strike Plaintiff's request for punitive damages pursuant to Rule 12(f). Def.'s Mot. at 2:9–27. Rule 12(f), however, is the improper vehicle by which to attack damages allegations. Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974–76 (9th Cir. 2010). Such attacks should instead be made pursuant to Rule 12(b)(6). Id. Accordingly, the Court construes Defendant's instant Motion as a second motion to dismiss pursuant to Rule 12(b)(6).

Defendant's contentions against the request for punitive damages are based largely on the same grounds as those made against the IIED claim: that Plaintiff improperly relies upon unsupported conclusory allegations. Def.'s Mot. at 15:5–8. The Court once more disagrees. Under California law, "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civil Code § 3294(a). Malice is defined as "despicable conduct" done with a "willful and conscious disregard of the rights or safety of others," and oppression is defined as "despicable conduct that subjects a

| | |
|---|---|
| 1 | person to cruel and unjust hardship in conscious disregard of that person's rights." Id. at |
| 2 | § 3294(c). |
| 3 | As discussed above, Plaintiff has pled sufficient facts to show that Defendant's |
| 4 | actions, if true, may have been extreme or outrageous for the purposes of an IIED claim. |
| 5 | Courts in this district have found that a valid state law claim for IIED can form the basis |
| 6 | for recovery of punitive damages. See Blanco v. Cnty. of Kings, 142 F. Supp. 3d 986, |
| 7 | 1006 (E.D. Cal. 2015) (Providing that "[u]nder California Civil Code § 3294, the recovery |
| 8 | of punitive damages may be allowed on a successful tort claim."). Additionally, the |
| 9 | nature of Plaintiff's claims supports that Defendant may have acted with malice or |
| 10 | oppression such that punitive damages may be available pursuant to § 3294. See |
| 11 | Inzerillo v. Green Tree Servicing LLC, No. 13-cv-06010-MEJ, 2014 U.S. Dist. LEXIS |
| 12 | 47022, at *27 (N.D. Cal. Apr. 3, 2014) ("With respect to whether Defendant's actions |
| 13 | could provide the basis for an award of punitive damages, courts have found that |
| 14 | voluminous and harassing debt collection communications can constitute oppression, |
| 15 | malice, or fraud within the meaning of section 3294."); see also Fausto v. Credigy Servs. |
| 16 | Corp., 598 F. Supp. 2d 1049, 1056-57 (N.D. Cal. 2009). The Court finds these decisions |
| 17 | persuasive, and as such, applies the same reasoning here. |
| 18 | The Court finds that Plaintiff's factual allegations in the FAC suffice to show that |
| 19 | Defendant's actions may have constituted oppression, malice, or fraud within the |
| 20 | meaning of § 3294 such that punitive damages may be warranted. Therefore, |
| 21 | Defendant's motion to dismiss Plaintiff's claims for punitive damages is DENIED. |
| 22 | /// |
| 23 | /// |
| 24 | /// |
| 25 | /// |
| 26 | /// |
| 27 | /// |
| 28 | /// |

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss and/or Strike, (ECF No. 10), is DENIED.

IT IS SO ORDERED.

Dated: May 12, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE