David S. Reidy (SBN 225904)
dreidy@mcguirewoods.com
Adrian L. Canzoneri (SBN 265168)
acanzoneri@mcguirewoods.com
Jamie D. Wells (SBN 290827)
jwells@mcguirewoods.com
**MCGUIREWOODS LLP**
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111
Telephone: 415.844.9944
Facsimile: 415.844.9922

Attorneys for Defendant
Bank of America, N.A.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLI HAYWARD, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant. | CASE NO. 2:16-CV-03047-MCE-DMC<br><br>**DEFENDANT BANK OF AMERICA, N.A.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Complaint Filed: December 29, 2016<br>FAC Filed:   March 13, 2017<br><br>Honorable Morrison C. England |

## I.     INTRODUCTION

The question at the heart of this case is whether Plaintiff applied her 2013 insurance proceeds to the balance then owing on her Bank of America, N.A. ("BANA") mortgage loan. There are no triable issues of fact to be decided in order to answer this question: the evidence all confirms that Plaintiff did not take the steps necessary to pay off her loan. Plaintiff's entire lawsuit against BANA fails as a result.

Plaintiff's claims rely on a fundamental misunderstanding that the insurance money was equivalent to Plaintiff's own funds—it was not. Plaintiff's Deed of Trust gave *BANA*, not Plaintiff, the right to determine the disposition of those proceeds. Because BANA was entitled to protect its interest in the collateral that secured the loan, and to protect itself against claims from contractors or insurance adjusters, such as Greenspan, to some portion of the insurance proceeds. BANA was therefore within its rights to require Plaintiff to submit adequate documentation before obtaining the right to apply the funds to her loan balance. This is all undisputed. It is further undisputed that Plaintiff never submitted such documentation. In fact, Plaintiff repeatedly informed BANA that she intended to use the funds to rebuild—which is flatly inconsistent with her claim now that she wanted to pay off the loan.

In her opposition, Plaintiff spends much time on her efforts to obtain a loan modification, though these allegations are time-barred and irrelevant to her claims, and on BANA's duty of good faith and fair dealing, though Plaintiff does not assert any claim in this case that BANA's breached such a duty. What she does not do is provide any evidence that BANA engaged in any misconduct related to its handling of the insurance proceeds, or any evidence that BANA's actions caused her to suffer any injury. Absent such evidence, Plaintiff cannot proceed to trial and BANA is accordingly entitled to summary judgment.

## II.     LEGAL ARGUMENT

**A.     Plaintiff Has Suffered No Injury as a Result of BANA's Alleged Conduct**

Plaintiff alleges she suffered credit damage and emotional distress, but does not provide any evidence establishing these injuries, let alone that they were caused by BANA.

It is undisputed that Plaintiff regularly missed payments on her mortgage beginning in 2009, and that she has not made any payment on the loan since September 2012—a full year before the wildfire. UMF 3. Plaintiff admits she knew the negative impact that missing loan payments would have on her

-2-
DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RENEWED
MOTION FOR SUMMARY JUDGMENT

credit [UMF 4], and further admits that she had defaulted on a prior mortgage secured by a different property which was sold by foreclosure sometime after 2009. Reidy Decl. ¶ 3, Ex. A (Plaintiff's Depo. Transcript) 26:9-31:2. It is therefore undisputed that Plaintiff's own conduct negatively impacted her credit score, yet there is no evidence that any action by BANA with regard to the insurance proceeds had any independent impact. *Drendel v. Wells Fargo Bank, N.A.*, 2013 WL 12116373, at *4 (C.D. Cal. 2013) (holding allegations regarding damage to credit score were conclusory and insufficient to show causation).

In support of her damages claim here, Plaintiff introduces decline letters from Shefield Financial (dated June 25, 2016), GM Financial Leasing (dated June 18, 2017), GM Financial (dated June 18, 2017), and LendingClub (dated February 20, 2017), yet none of these letters identifies BANA or offers any proof that Plaintiff was declined credit because of *BANA's* alleged wrongdoing. Plaintiff's Exs. 22, 25. What is more, Plaintiff testified that she was approved for credit several times between 2013 and 2016 despite her history of defaulting on the BANA loan. Reidy Decl. ¶ 3, Ex. A (Plaintiff's Depo. Transcript) 16:14-19; 18:22-19:11; 22:17-23:3.

Plaintiff also has not adduced any evidence showing that her credit score declined after November 25, 2013, when she claims she paid off her BANA loan. The only evidence introduced on this issue is Plaintiff's own self-serving testimony. Plaintiff's Ex. 5 at ¶ 22 ("BANA's actions and reporting continue to make my credit suffer."). Yet documents submitted by Plaintiff show her credit score improving during that time. Plaintiff's Ex. 25 (Hayward_001058 (showing Plaintiff's credit score was 547 as of 6/25/16); *id.* (Hayward_001053 (showing Plaintiff's credit score was 564 on 5/26/17). Based on the foregoing, Plaintiff cannot establish credit damage much less the required causal connection between any of BANA's purported wrongdoing. *Drendel*, 2013 WL 12116373, at *4.

To the extent Plaintiff alleges she suffered emotional distress, she has produced no evidence connecting any wrongdoing by BANA with any medical treatment sought by Plaintiff for physical manifestations of emotional distress as a result of BANA's conduct. Plaintiff alleges her "depression magnified" and "anxiety worsened" [Plaintiff's Ex. 5 (Plaintiff's Decl. ¶ 20)], but she submits absolutely no evidence showing that her purported emotional distress was caused by BANA. In fact, Plaintiff's testimony confirms that traumatic events in her life unrelated to any actions on the part of BANA —

such as the loss of her husband and the property burning down– were the basis for any emotional distress. Plaintiff's Ex. 5 (Plaintiff's Decl. ¶ 9 ("[I]t was very emotionally difficult to deal with the aftermath of the fire."); *id.* ¶ 18 ("My depression worsened due to the stressors weighing on me in the aftermath of my husband's death, my home burning down…"). Plaintiff also testified that she received treatment for depression and emotional distress *before* the fire. Reidy Decl. ¶ 3, Ex. A (Plaintiff's Depo. Transcript 94:5-23). Accordingly, Plaintiff has not—and cannot—establish any alleged emotional distress was caused by BANA.

In sum, there is no evidence that BANA's conduct in any way caused Plaintiff to suffer any injury. BANA therefore is entitled to judgment on all of Plaintiff's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); Fed. R. Civ. P. 56.

**B.      The Deed of Trust Authorized BANA to Hold Plaintiff's Insurance Proceeds**

The plain language of the Deed of Trust gave BANA the right to hold the insurance proceeds, a fact Plaintiff does not dispute.[1] Plaintiff nonetheless argues that BANA breached the implied covenant of good faith and fair dealing—though she does not assert such a claim in this case—by "ignoring" Plaintiff's mortgage payoff. Opp. 4:11-12. Specifically, Plaintiff alleges that she went to BANA's Redding, California branch on November 25, 2013 "with the intention of paying off [her] mortgage loan on the Property with the Insurance Proceeds." Plaintiff's Ex. 5 (Plaintiff's Decl. ¶ 12). Plaintiff "asked the BANA branch personnel to help [her] get [her] mortgage loan paid off with the insurance check." *Id.* Plaintiff admits she was told that she "could not pay off the loan at that bank location, but that the check had to go to the BANA Payment Processing department to pay off the loan." *Id.*

In support of the alleged payoff, Plaintiff offers a UPS shipment receipt to BANA's Property Claims department in Simi Valley. In addition to delivery of the insurance checks to BANA (which is undisputed), Plaintiff also claims she shipped a "Payoff Statement." Plaintiff's Ex. 5 (Plaintiff's Decl. ¶¶ 10, 12); Exs. 9-10. The Payoff Statement, which expired November 15, 2013—10 days before it was

---

[1] *See* Plaintiff's Response to UMF 6 (Plaintiff disputes that the Deed of Trust requires Plaintiff to insure the property but does not dispute the fact that the Deed of Trust requires Plaintiff, in the event of a loss, to direct any insurance payment to BANA and allows BANA, at its option to apply any such insurance proceeds "either (a) to the reduction of the indebtedness […], or (b) to the restoration or repair of the damaged Property.").

mailed in—lists the amount required to pay off the mortgage loan "by wire or certified funds only." *See* Plaintiff's Ex. 9 ("Payoff funds must be made payable to [BANA] and will be accepted by wire or certified funds only."). Plaintiff could not have used the insurance checks to pay off her loan at that time because the insurance checks are not "certified funds;" as discussed, BANA had the right to hold the checks, and further to request waiver and release documentation from Plaintiff before applying the insurance proceeds to Plaintiff's loan balance. *See* UMF 4, 6, 13. The fact that Greenspan was entitled to a 10% cut of any insurance payment, and that Plaintiff had informed BANA that she planned to rebuild, justifies the need for waiver and release documents to be provided before insurance money could be released. Indeed, all this is undisputed. Plaintiff's UPS receipt and "payoff statement" therefore do not raise a triable issue of material fact in support of her central allegation.

Although Plaintiff alleges that she went into the Redding branch on November 25, 2013 with the intention to use the insurance proceeds to pay off the loan [Plaintiff's Ex. 5 (Plaintiff's Decl. ¶ 12)], it is undisputed that the following day she told BANA that she planned to rebuild the property. UMF 9. Plaintiff claims that she never "affirmatively decided" to move forward [Plaintiff's Response to UMF 9], but the evidence shows that she told BANA on numerous occasions that she planned to rebuild— and even represented that the rebuild was underway. UMF 9, 11, 13, 17. More importantly, the issue is not whether Plaintiff ever made up her mind, but rather whether Plaintiff ever submitted the documentation required to apply the insurance proceeds to her outstanding loan balance. The evidence confirms that she did not. *See* UMF 10, 17-27.

**C.    Plaintiff Cannot Establish Conversion Because BANA Disbursed the Funds It Was Not Entitled to Withhold**

Plaintiff's conversion claim alleges that BANA improperly withheld Plaintiff's excess insurance proceeds over and above the amounts owed on her loan. FAC ¶ 82. It is undisputed that on January 7, 2014, BANA issued a check in the amount of $212,952.17, made payable to Plaintiff and Greenspan, which represented the excess insurance proceeds over the balance owing on Plaintiff's loan. UMF 14.[2]

///

---

[2] UMF 14 is undisputed. *See* Plaintiff's Response to UMF 14.

In an effort to defeat summary judgment, Plaintiff changes her conversion theory, now alleging that there is a "genuine dispute of material fact as to whether [Plaintiff] is entitled to possession of" the remaining insurance proceeds. Opp. 14:20-26. This is improper. *See Wasco Products, Inc. v. Southwall Techs., Inc*., 435 F3d 989, 991 (9th Cir. 2006) (plaintiff could not oppose summary judgment by raising new arguments that were not alleged in the complaint).

In any event, Plaintiff's new conversion theory fails because she did not have a right to possession of the insurance proceeds. *See Wells Fargo Bank, N.A. v. Kuhn*, 2015 WL 12655702, at *1 (C.D. Cal. 2015) (borrower did not have a right to possess insurance proceeds under a deed of trust and granting summary judgment in favor of bank on conversion claim).

### D.  Plaintiff's Derivative Claims For Quiet Title, and For Violations of California's CLRA and CCRAA, Fail For the Same Reasons

Plaintiff's seventh claim to "quiet title," ninth claim for violation of the CLRA, and tenth claim for violation of the CCRAA all rely on Plaintiff's claim that she paid off the loan on November 25, 2013. Again, because Plaintiff cannot establish that she paid off the loan, she cannot establish her claims. Plaintiff's claims for violations of the CLRA and CCRAA also fail for the following additional reasons.

Plaintiff's CLRA claim fails because the CLRA does *not* apply to mortgage loans, or to the ancillary services related to loans. *See Palestini v. Homecomings Financial, LLC*, 2010 WL 3339459, at *11 (S.D. Cal. 2010). Plaintiff argues that BANA provided a service to Plaintiff when it "renegotiated, offered, evaluated and awarded Plaintiff loan modifications." Opp. 16:10-11, citing *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111 (C.D. Cal. 2012); *Hernandez v. Hilltop Fin. Mortg., Inc*., 622 F. Supp. 2d 842 (N.D. Cal. 2007). But Plaintiff's loan modifications in 2010-2012 pre-date the events giving rise to this case. Plaintiff's reliance on the *Rex* and *Hernandez* cases is also misplaced.

In *Rex,* the Court granted Defendants' motion to dismiss Plaintiffs' CLRA claim, finding that Plaintiffs failed to identify "any allegations which would differentiate [the] case from *Fairbanks,* namely, allegations that Defendants' interaction with Plaintiffs went beyond a contract to pay money." *Rex*, 905 F. Supp. 2d at 1157. *Rex*, thus supports BANA's position. The same is true for *Hernandez*, which involved allegations arising from ongoing negotiations for refinancing between the plaintiff and the defendant-lender's agent. *Hernandez*, 622 F. Supp. 2d 842. Unlike *Hernandez*, loan modification

negotiations are not alleged in Plaintiff's FAC, and would be time-barred in any event. Civ. Code. § 1783 (CLRA claims have a three year statute of limitations); *Wasco Products, Inc.*, 435 F3d at 991.

Plaintiff's CCRAA claim fails because, as set forth in Section II.A, supra, Plaintiff cannot establish she suffered any actual harm as a result of the allegedly inaccurate credit reporting.[3] Plaintiff also cannot show that BANA's reporting was inaccurate. Plaintiff introduces a portion of an undated Transunion report and Experian Credit Report dated September 8, 2017 [Plaintiff's Ex. 18],[4] to show that "BANA has continued to report to credit bureaus that her loan has been in delinquent status since 2012" [Opp. 17:11-14]—however, it is undisputed that Plaintiff never paid off her mortgage and that she has not made a single payment toward the loan since September 2012. Like any other creditor, BANA is required to report *accurate information* to the CRAs. Civ. Code § 1785.25(a). It is not required to report whatever a *debtor believes or demands should be reported*. Nor is it plausible that BANA knew or should have known its reporting was false—as alleged. In fact, the evidence shows the opposite. BANA repeatedly told Plaintiff it was holding the remaining insurance proceeds and about the steps needed to apply those funds to her mortgage debt, but Plaintiff never provided the information. UMF 10, 17-27.

Plaintiff cannot establish a triable issue of material fact as to her seventh, ninth and tenth claims. BANA is entitled to entry of judgment accordingly. *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56.

**E.     Plaintiff's Rosenthal Act Claim Fails Because BANA Did Not Engage In Any Improper Debt Collection**

Plaintiff submits no evidence establishing that BANA made harassing calls to Plaintiff or used false and unconscionable means to collect or attempt to collect a debt as alleged. FAC ¶¶ 33, 44-46. In her opposition, Plaintiff states that "calls and communications took place during a specific period, contained recordings, beeps, and delays" [Opp. 22:24-27 (citing Plaintiff's Ex. 5 (Plaintiff's Decl. ¶

---

[3] "The California Court of Appeal has made clear that actual damage is properly construed as either 'an element of a CCRAA cause of action or a prerequisite to standing.' Either way, a plaintiff cannot recover under the CCRAA without proving actual harm." *Duarte v. J.P. Morgan Chase Bank*, 2014 WL 12561052, at *3 (C.D. Cal. 2014).

[4] Plaintiff's counsel submitted a declaration stating that the documents in Exhibit 18 were produced during discovery. Plaintiff's counsel's declaration lacks foundation and personal knowledge required to authenticate the documents. *See* Ev. Objs.

17))]—but in her prior deposition testimony she admitted that she did not answer the phone, and that she has no recollection of the calls. UMF 41.[5]

Plaintiff cannot create a triable issue of fact by submitting a declaration contradicting her prior testimony. *Yeager v. Bowlin*, 693 F3d 1076, 1080 (9th Cir. 2012). Not only does Plaintiff's declaration contradict her prior deposition testimony, it is completely devoid of any actual evidence establishing that BANA engaged in any harassing or improper conduct. *See e.g.* Plaintiff's Ex. 5 (Plaintiff's Decl. ¶ 24 ("Up until I filed suit against BANA I received numerous robo calls telling me that my home is in foreclosure. The calls started back in 2009 through September 2016.")). "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir.1997). For these reasons, as well as those set forth in Section V.C of BANA's motion, BANA is entitled to judgment on Plaintiff's Rosenthal claim. *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56.

### F. Plaintiff's Negligence Claim Fails Because BANA Did Not Owe a Duty of Care

Plaintiff attempts to impose a duty of care on BANA by relying on a series of inapposite cases evaluating whether the *Biakanja* factors[6] impose a duty of care on lenders in the context of a loan modification review. Opp. 25:1-27:23. Plaintiff's reliance on these cases is misplaced because Plaintiff's loan modifications are not at issue, as discussed.

### G. BANA is Entitled to Judgment on Plaintiff's Privacy Claim

Plaintiff does not oppose BANA's motion for summary judgment on Plaintiff's fourth cause of action for "invasion of privacy." *See generally* Opp. A failure to challenge a party's argument in an opposition indicates that the argument is meritorious, and Plaintiff therefore is deemed to have conceded that BANA's motion for summary judgment is well-taken and should be granted by the Court in its

---

[5] UMF 41 is undisputed. *See* Plaintiff's Response to UMF.

[6] "The Biakanja factors are six nonexhaustive factors: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Jolley v. Chase Home Fin., LLC*, 213 Cal.App.4th 872, 899 (2013), as modified on denial of reh'g (Mar. 7, 2013), citing *Biakanja v. Irving*, 49 Cal.2d 647, 650 (1958).

entirety. *See Franklin v. McDonald*, 2011 U.S. Dist. LEXIS 51884, at *3 (E.D. Cal. May 13, 2011); Fed. R. Civ. P. 56.

**H.  Plaintiff's IIED Claim Fails Because BANA Did Not Engage in Any Extreme or Outrageous Conduct and Plaintiff has Failed to Present Any Evidence of Extreme Emotional Distress Caused by BANA**

Plaintiff does not present any evidence that BANA engaged in any extreme and outrageous conduct, let alone that BANA engaged in any such conduct with the intention of causing, or reckless disregard of causing, emotional distress, as required. *Cervantes v. J.C. Penny,* 24 Cal.3d 579, 593 (1979). Rather, Plaintiff relies on her own testimony to argue that she suffered emotional distress, and thus, has established a triable issue on her IIED claim. Plaintiff alleges her testimony alone is sufficient and cites and variety of inapposite cases to support her claim. Opp. 23:11-28. Despite Plaintiff's self-serving statements, she has not—and cannot—establish any alleged emotional distress was caused by BANA, much less severe emotional distress. *See* Section II.A, supra. For these reasons, as well as those set forth further in Section V.D.3 of BANA's motion, BANA is entitled to judgment on Plaintiff's eighth cause of action for IIED.

**I.  There is No Triable Issue on Plaintiff's TCPA Claim**

BANA incorporates herein by reference its unopposed Rule 11 motion, which demonstrates that Plaintiff's TCPA claim lacks merit. ECF No. 51. In her opposition to summary judgment, Plaintiff points to a single call notation which (she claims) includes a "dialer identification listed as 'nbk19t5.'" Opp. 21:4-5. In fact, the dialer identification for that call lists "manual." UMF 29. And Plaintiff offers no *evidence* that the call was placed using an autodialer. Plaintiff also claims that it will be "necessary for an expert to testify" in order to support her claim, but summary judgment cannot be defeated with speculation, or with the hypothetical testimony of an undisclosed witness. *See Clinton v. Los Angeles Men's Cent. Jail*, 2008 WL 11357860, at *8 (C.D. Cal. 2008) ("Summary judgment cannot be avoided by relying solely on conclusory allegations unsupported by factual data."). Plaintiff's new and self-serving declaration testimony—to the effect that she heard "clicks, beeps, and . . . delays"—is also unavailing. Opp. 21. Her new statement contradicts prior deposition testimony in which Plaintiff admitted she could not remember answering any calls. UMF 41 (Plaintiff's Depo. Transcript 49:19-

50:5; 56:12-14); *also* FAC ¶ 38 (admitting that Plaintiff did not answer many incoming calls). "[A] party cannot create a triable issue by contradicting his prior deposition testimony." *Yeager*, 693 F3d at 1080 (internal quotations and citations omitted). In short, the opposition does nothing to refute the showing that only manually dialed calls were placed to Plaintiff's cell phone and that BANA had consent to place such calls. As a result, Plaintiff's TCPA claim fails.

### III.   CONCLUSION

For all of these reasons, Plaintiff cannot establish BANA improperly withheld the insurance proceeds or engaged in any other wrongdoing. Because Plaintiff cannot present evidence sufficient to raise a triable issue of material fact on the essential elements of her claims, BANA is entitled to summary judgment. *Celotex*, 477 U.S. at 322.

DATED: August 12, 2019                MCGUIREWOODS LLP

                                      By:   */s/ David S. Reidy*
                                            David S. Reidy
                                            Attorneys for Defendant,
                                            Bank of America, N.A.